**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TIMOTHY MURPHY,

*Plaintiff*,

*v*.

HEIDI E. WASHINGTON, et al.,

*Defendants*.
______________________________/

Case No. 2:26-cv-10630

Susan K. DeClercq
United States District Judge

Patricia T. Morris
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 21)**

## I. RECOMMENDATION

For the following reasons **IT IS RECOMMENDED** that the Court **DENY** Defendants' joint motion for summary judgment on the basis of exhaustion. (ECF No. 21). If adopted, the Undersigned will enter a scheduling order setting deadlines for discovery and dispositive motions.

## II. REPORT

### A. Background

Plaintiff Timothy Murphy, currently confined by the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging deprivations of his freedom of

speech and due process rights as well as unlawful retaliation. (ECF No. 1). Plaintiff brings these claims against the MDOC Director Heidi Washington, in her official capacity, and against prison counselor Maxwell McVean, general office assistants Brian Madery, Jennifer Norder, and Nichelle Bartell, and inspector Christina Tagett in their individual capacities. (*Id.* at PageID.3).

More specifically, Plaintiff alleges Defendants

> (1) unlawfully censored [his] incoming and outgoing email correspondence to and from members of the public ("correspondents") without providing written Notice and a Hearing at which to challenge the censorship decisions; (2) Indefinitely blocked [him] from corresponding by email with two of his correspondents without providing [him] or the two correspondents with Notice and a Hearing at which to challenge[] the prohibition on corresponding by email; and (3) retaliated against [him] for engaging in constitutionally protected activities when censoring his outgoing and incoming email correspondence and thereafter prohibiting [him] communicating by email with any and all of his correspondents by blocking him from sending or receiving any email correspondence to or from anyone for at least 6 months. This Complaint further sets forth a facial challenge to the constitutionality of MDOC Policy Directive 05.03.119 "Electronic Messaging (E-Mail) effective 08/01/2023.

(*Id.* at PageID.1–2). These allegedly unlawful retaliatory actions started shortly after Plaintiff helped another inmate defeat a motion for summary judgment based on the constitutionality of PD 05.03.119. (*Id.* at PageID.4–6). *See also Kilbourne v. Washington*, No. 23-cv-13008 (E.D. Mich.) (ECF Nos. 33 (brief prepared by Plaintiff Timothy Murphy responding to defendants' motion for summary judgment), 38 (recommending defendants' motion for summary judgment be denied

as PD 05.03.119 facially denied prisoners of constitutional safeguards), 40 (order adopting recommendation)).

Defendants filed a motion for summary judgment based on exhaustion with exhibits and corrected exhibits (ECF Nos. 21, 23, 25), and Plaintiff responded (ECF No. 24). Defendants have not filed a reply brief and the deadline to so has passed. The motion is thus ready for consideration.

**B. Summary Judgment Standard**

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not to weigh the evidence but to determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 249–50. Accordingly, the Court views all evidence and reasonable inferences in favor of the nonmoving party. *Couzens v. City of Forest Park*, 114 F.4th 571, 577 (6th Cir. 2024).

"Because defendants carry the burden of proof for exhaustion, they bear an initial summary judgment burden that is higher in that they must show that the record contains evidence satisfying their burden of persuasion and that no reasonable jury

would be free to disbelieve it." *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023) (cleaned up); *see also Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (holding defendants have burden to present evidence showing plaintiff's ability to exhaust was not hindered when plaintiff contends he was prevented from exhausting). Thus, summary judgment is appropriate only if there is no genuine dispute of material fact that the plaintiff has failed to exhaust. *Morgan*, 67 F.4th at 366. But the nonmoving party cannot rebut a Rule 56 motion by merely alleging a genuine factual dispute exists. Fed. R. Civ. P. 56(e). Instead, the nonmoving party must show "the evidence is such that a reasonable jury could return a verdict" in their favor. *Anderson*, 477 U.S. at 248.

**C. Grievance Process**

Defendants argue Plaintiff failed to exhaust any of his claims prior to filing suit. (ECF No. 21). Defendants attached his MDOC Step III Grievance Report, which shows Plaintiff pursued 17 grievances through Step III within the relevant period. (ECF No. 21-4, PageID.105–09).

Under the Prison Litigation Reform Act (PLRA), prisoners may not bring actions against prison officials to challenge conditions of their confinement under § 1983, "or any other Federal law," without first exhausting all available administrative remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Coleman v. Washington*, No. 18-13171, 2020 WL 4932110, at *2 (E.D.

Mich. Aug. 24, 2020) (including RLUIPA). Prisoners must exhaust their administrative remedies "using all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation omitted) (emphasis in original). "'[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'" *Walker v. Washington*, No. 23-2104, 2025 WL 1145719, at *2 (6th Cir. Apr. 15, 2025) (quoting *Jones v. Bock*, 545 U.S. 199, 218 (2007)).

Ultimately, "the PLRA is clear that 'a prisoner confined in any jail, prison, or other correctional facility' must exhaust only 'such administrative remedies as are available.'" *Savoie v. Oliver*, 731 F. Supp. 3d 862, 874 (E.D. Mich. 2024) (quoting 42 U.S.C. § 1997e(a)). "[I]f a prisoner cannot make use of the prison grievance process—if administrative remedies are unavailable—she is excused from the exhaustion requirement." *Bailey v. Washington*, 784 F. Supp. 3d 997, 1006 (E.D. Mich. 2025) (citing *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)). Further, "[a]t the end of the day, someone must carry the burden" of proving or disproving exhaustion, and the PLRA reflects Congress' judgment that "it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion." *Lamb*, 52 F.4th 286, 294–95, 298 (cleaned up); *see also Napier v. Laurel Cty.*, 636 F.3d 218, 225 (6th Cir. 2011) (holding that the initial burden of proof to show a failure to exhaust administrative remedies lies with the defendants).

In Michigan, a prisoner must proceed through resolution of a Step III appeal prior to filing a civil suit. *See Ryan v. G. Robert Cotton Corr. Facility*, No. 22-1808, 2023 WL 6059802, at *2 (6th Cir. May 15, 2023). Policy Directive 03.02.130 outlines MDOC's three-step, internal process for prisoners to raise formal complaints. (ECF No. 21-3, PageID.94–101). Pursuant to the directive, a prisoner is required to first informally "attempt to resolve the issue with the staff member involved within two business days" and if unsuccessful, file a Step I grievance within five business days. (*Id.* at PageID.97–98). If a prisoner is dissatisfied with the disposition of the Step I grievance or did not receive a timely response, then he can file a Step II grievance. (*Id.* at PageID.99–100). Similarly, if a prisoner is dissatisfied with the Step II response or did not receive a timely response, he has ten days to file a Step III grievance. (*Id.* at PageID.100). A grievance may be rejected for procedural reasons such as untimeliness, vagueness, including more than one issue, or failing to attempt to resolve the issue with the staff member prior to filing a grievance. (*Id.* at PageID.95–96).

Finally, claims against defendants who have not appeared may also be dismissed *sua sponte* where a plaintiff has clearly failed to exhaust his administrative remedies—especially where the claims are the same as those against the appearing defendants. *Coleman v. Snyder*, No. 17-11730, 2018 WL 4103364, at *2 (E.D. Mich. Aug. 29, 2018).

### D. Discussion

Plaintiff's Step III grievance report shows he appealed 17 grievances through Step III during the relevant time. (ECF No. 21-4, PageID.105–09). Only 16 of them are relevant to the issues here; it is undisputed grievance 1620 is irrelevant and does not serve to exhaust any of Plaintiff's claims. (ECF No. 21, PageID.81).

#### 1. Timeliness

Several of Plaintiff's grievances (grievances 40, 1612, and 1334) were rejected as untimely. The MDOC grievance policy provides that grievances "shall be considered filed on the date received by the Department." (ECF No. 21-3, PageID.98). As discussed above, a prisoner generally has two business days to attempt to resolve the issue with the staff member involved and then five business days after that to file their Step I grievance. (*Id.* at PageID.97).

For grievance 40, the incident allegedly occurred on November 25, 2025. (ECF No. 21-4, PageID.116). Defendants argue it was not filed until January 7, 2026, when the prison stamped it as received, which is well past the due date. (*Id.*).

Plaintiff responds with an affidavit and supporting documents which tell a different story. First, he points out that he dated the grievance November 28, 2025. Second, he avers he "clearly and properly address[ed] it to the JCF Grievance Coordinator and plac[ed] it in the Interdepartmental Mail (Kite Box) located in [his] housing unit" that same day. (ECF No. 24, PageID.263). By December 9, he still

had not received a receipt for the grievance, so he sent a kite inquiring as to its status. (*Id.* at PageID.263, 278). Having still not received a response, he again inquired as to its status on January 3, 2026. (*Id.* at PageID.264, 280). It was finally marked as "received" and rejected on January 7. (ECF No. 21-4, PageID.116).

Similar timing issues and arguments are detailed with grievances 1612 and 1334. (*See* ECF No. 21, PageID.82–83; ECF No. 21-4, PageID.129–33, 139–43; ECF No. 24, PageID.248–50, 262–63).

Defendants have failed to respond to Plaintiff's evidence and the Undersigned agrees with Plaintiff that he has raised a genuine issue of material fact as to whether these grievances were properly rejected as untimely and thus whether the grievance process was available to him. *See Alger v. Campbell*, No. 24-cv-11831, 2025 WL 1372982, at *6 (E.D. Mich. Apr. 24, 2025) ("Alger drafted Step II in a timely manner, and the fact that MDOC received it two business days past the deadline, and thirteen days past the purported date of filing, is irrelevant. To find otherwise would cause Alger to be subject to the pace of the prison's mail system, which essentially renders the grievance process unavailable."), *report and recommendation adopted*, 2025 WL 1372823 (E.D. Mich. May 12, 2025). "[T]o measure the five-day period from the date of *receipt* would be to subject the prisoner to the vagaries of the prison mail system, which are totally beyond the prisoner's control. A prisoner should not be penalized for the delays in [interdepartmental] mail." *Fox v. Jenkins*, No. 21-cv-

12950, 2022 WL 18107234, at *5 (E.D. Mich. Nov. 14, 2022), *report and recommendation adopted*, 2023 WL 22908 (E.D. Mich. Jan. 3, 2023).

This rule is logical and the same reasoning underpins the "prisoner mailbox rule" long recognized by the courts (and by Defendants (ECF No. 21, PageID.66)). For example, MDOC could simply deny all grievances sent by interdepartmental mail as untimely if they regularly took five business days to arrive, making administrative remedies unavailable to all prisoners. *See id.* ("If Step I grievances sent by [interdepartmental] mail are regularly in transit for five days before being 'received,' the inmate no longer has a five-day window after failing to resolve a dispute but rather, an impossible 'zero-day' window to avoid a rejection of the grievance on the basis of untimeliness."). Therefore, the Undersigned recommends the Court deny Defendants' motion for summary judgment as to these three grievances.

**2. Jurisdiction**

In grievance 1416, Plaintiff complained that unidentified mailroom and MDOC staff were unlawfully retaliating against him for his involvement in *Kilbourne* by not delivering J-Pay messages or notifying him of their censorship. (ECF No. 21-4, PageID.137). The grievance was rejected for "lack of jurisdiction–Jpay." (*Id.* at PageID.138). In his Step II and III appeals, Plaintiff reiterated that his grievance was premised on the "sole issue of retaliation" by mailroom staff and

MDOC officials and had nothing to do with J-Pay's algorithm or retaliation by J-Pay. (*Id.* at PageID.135). The rejection was upheld. (*Id.* at PageID.134, 136).

Defendants argue the basis for this rejection was pursuant to ¶ P.12 of the policy, which states that "issues not within the authority of the Department to resolve (e.g., disputes between a prisoner and an MDOC vendor or outside agency (courts), etc.)" shall be rejected. (ECF No. 21, PageID.83; ECF No. 21-3, PageID.96). The policy further states that "[t]he grievant shall be told who to contact in order to attempt to resolve the issue, if known." (ECF No. 21-3, PageID.96). Thus, Defendants conclude that "[a]s the issue being grieved . . . was determined to be a JPay issue and not attributable to the MDOC or its staff, this grievance was rejected as non-grievable." (ECF No. 21, PageID.83).

But this is a mischaracterization of the record. There was no investigation into Plaintiff's grievance which concluded in a denial after MDOC determined that any perceived delay or denial of Plaintiff's messages was a J-Pay glitch or issue. Instead, MDOC merely rejected the grievance for lack of jurisdiction without investigating or providing any information to Plaintiff as to who to contact to resolve the issue. (*See* ECF No. 21-3, PageID.98, 100 (noting that a rejected grievance does not address the merits of the complaint)).

Moreover, a simple reading of the grievance makes absolutely clear that Plaintiff was not grieving an issue outside MDOC's jurisdiction—he specifically

stated he was being retaliated against by *MDOC staff*. An actual investigation into the grievance may have shown differently, but MDOC did not investigate. Instead, it improperly rejected this grievance, making administrative remedies unavailable to Plaintiff.[1] Therefore, Defendants' motion for summary judgment on grievance 1416

---

[1] Indeed, Defendants' argument here (and at other portions of their motion) could be found frivolous. Defendants cited no caselaw, did not engage in an analysis of the grievance or explain why it was properly rejected, chose not to respond to Plaintiff's well-reasoned counterarguments, nor withdrew any potentially frivolous arguments. Federal Rule of Civil Procedure 11 requires legal arguments to be warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Merely regurgitating MDOC's blatantly unjustified basis for rejecting the grievance with the hopes that Plaintiff will not respond or that the Court will rubberstamp the argument does not rise to the level required by Rule 11 as to an attorney's independent duties to the Court. Therefore, Defendants' counsel, Assistant Attorney General Joseph Yung-Kuang Ho, is hereby **CAUTIONED** to ensure that future arguments comply with Rule 11. Failure to do so could result in sanctions.

Additionally, the Undersigned notes this is not the first time she has found Mr. Ho's briefing to be lacking. *See Edwards v. Kaur*, No. 24-cv-12786, 2025 WL 4686612, at *4 n.2 (E.D. Mich. Dec. 16, 2025) (pointing out that Mr. Ho failed to cite relevant cases where his same arguments had been rejected, which she pointed out *again* in her subsequent R&R on the defendant's second exhaustion motion), *report and recommendation adopted*, 2026 WL 571133 (E.D. Mich. Mar. 2, 2026). Magistrate Judge Kimberly G. Altman has likewise noted issues with Mr. Ho's briefing. *See McDuff v. Jones*, No. 23-cv-11739, 2024 WL 3506714, at *4 (E.D. Mich. June 25, 2024) ("The Court is constrained to note that defense counsel has now been informed by several courts that a rejection for failure to attach documents to a grievance appeal does not preclude exhaustion. Defense counsel should consider these decisions in whether to continue to advance this argument in future exhaustion motions." (citations omitted)), *report and recommendation adopted*, 2024 WL 3502495 (E.D. Mich. July 22, 2024).

Moreover, the Undersigned is aware that Mr. Ho has been particularly careless recently in his submissions, resulting in an inordinate number of errata sheets being submitted, many of which come after a prisoner has responded and pointed out the error. *See* ECF No. 24, PageID.245; ECF No. 25. *See also, e.g.*, *Moon v. Washington*, No. 25-cv-12537, ECF No. 26, PageID.287 n.4 (E.D. Mich. Sept. 23, 2026) (noting that—even after filing a corrected motion—attorney Ho still failed to attach an exhibit referenced in his motion for summary

should be denied.

### 3. Warden's Forum

The remaining 12 grievances (1709, 1273, 1248, 1214, 1130, 1111, 1131, 1166, 1179, 1144, 1074, and 1077) all follow a similar pattern. Plaintiff repeatedly complained that specific incoming and outgoing J-Pay messages or contacts were being censored and blocked without any notice, opportunity to respond, or explanation and that to the extent Defendants were relying on PD 05.03.119, it was unconstitutional as applied to the rejection of his messages. (*See* ECF No. 21-4, PageID.122, 147, 152, 157, 162, 167, 172, 177, 183, 188, 193, 198). In some of the grievances, he specifically stated he was challenging a violation of PD 05.03.119 "**as applied to me** (it is not grieving the *content* of the policy)." (*See, e.g.*, *id.* at PageID.147 (emphases in original)). In others, Plaintiff additionally noted a violation of PD 05.03.119. (*See, e.g.*, *id.* at PageID.147, 193). Nevertheless, each of the grievances was rejected at Step I and the rejections were upheld at Steps II and III with the canned response:

> A grievant may not grieve the content of policy or procedure except as

---

judgment which may have led to the denial of the motion if Plaintiff had not conceded that point); *Berryman v. Stephenson*, No. 21-cv-10925, ECF No. 242 (E.D. Mich. Oct. 5, 2026) (submitting an errata even after the Undersigned had already entered a report and recommendation and plaintiff had already filed objections). Whether this pattern shows negligent carelessness or an intentional pattern of conduct to delay or hinder *pro se* prisoners trying to respond to his motions in violation of Rule 11(b)(1) is not decided today. Nor is the Undersigned suggesting attorney Ho be sanctioned for his conduct in other cases, she is merely drawing his attention to his recent pattern of misconduct so that—hopefully—he will correct course without necessitating the Court's involvement.

> it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 "Prisoner Housing Unit Representatives/Warden's Forum".

(*See, e.g.*, *id.* at PageID.199).

Defendants argue the rejection of each of these grievances was appropriate pursuant to policy. PD 03.02.130 states that, among other things, grievances will be rejected when a "prisoner is grieving content of the policy or procedure except as it was specifically applied to the grievant. If a prisoner has a concern with the content of a policy or procedure, they may direct comments to the Warden's Forum as provided in PD 04.01.105 . . . .'" (ECF No. 21-3, PageID.96). Nevertheless, "Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant, including alleged violations of this policy and related procedures." (*Id.* at PageID.95). Defendants' argument clearly fails upon a simple reading of Plaintiff's grievances.

The only case Defendants cite, *Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145 (E.D. Mich. July 18, 2022), in no way helps their argument here. In *Moses*, the plaintiff complained of negligence in the prison's handling of the COVID-19 pandemic which led to him getting sick and fearing he would die. *Id.* at *1. He admitted in his complaint that he had not filed any grievances as he believed the issues affected the entire prison and therefore were not grievable

pursuant to policy. *Id.* at *1–*2. The magistrate judge recommended granting the defendants' motion for summary judgment based on exhaustion and, relevant here, the plaintiff objected to the finding that any reports he had made about his concerns to the housing unit representative did not excuse him from complying with MDOC's three-step grievance procedure. *Id.* at *7.

The court quoted the two parts of the policy quoted above and concluded: "Thus, MDOC PD 03.02.130 'mirrors the requirement in section 1983 that a plaintiff's personal rights be violated and not the rights of someone else.'" *Id.* (quoting *Hudson v. Caruso*, No. 10-cv-58, 2011 WL 1042296, at *7 (W.D. Mich. Jan. 24, 2011), *report and recommendation adopted*, 2011 WL 1042286 (W.D. Mich. Mar. 18, 2011)). The court then discussed that Moses' complaint explicitly complained about the prison's policy or procedure as it specifically applied to him, "and thus, . . . Moses' alleged reporting of any issues to the housing unit representative does not excuse him from the Policy's requirement that he exhaust his claims through the MDOC's three-step grievance process before filing his instant lawsuit." *Id.* The Undersigned is forced to question whether defense counsel actually read this case or Plaintiff's grievances before filing his motion.

Here, Plaintiff *repeatedly* filed grievances about *specific* messages sent to him or by him which were rejected pursuant to PD 05.03.119. He repeatedly complained that the rejection of these messages without any notice as to why they were rejected

or an opportunity to respond were either in violation of the policy, unlawful, or both. Thus, these grievances clearly fall within the policy exception allowing a prisoner to challenge a policy "as it was specifically applied to the grievant." Unlike in *Moses*, however, Plaintiff here *completed* all three steps of the grievance procedure *twelve times*, notwithstanding the improper rejections. The parties' arguments related to the warden's forum are therefore irrelevant. Plaintiff had a complaint about how a policy was personally affecting him and appropriately filed grievances through all three steps. MDOC improperly rejected these grievances, and the grievance process was therefore unavailable to Plaintiff. Defendants' motion for summary judgment should be denied.

### E. Conclusion

For these reasons, **IT IS RECOMMENDED** that the Court **DENY** Defendants' joint motion for summary judgment on the basis of exhaustion. (ECF No. 21).

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C.

§ 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 8, 2026

s/PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge